1      IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF FLORIDA
2                 ORLANDO DIVISION

3          Case no.:  6:12-cr-121-Orl-37KRS

4  UNITED STATES OF AMERICA,        )     Orlando, Florida
                                    )     January 22, 2013
5                 Plaintiff,        )     10:43 a.m.
                                    )
6                    v.             )
                                    )
7  LUIS E. MORALES                  )
                                    )
8                 Defendant.        )
   _____   )

9

10

11
                    Transcript of the sentencing
12
            before the Honorable Roy B. Dalton, Jr.
13
                  United States District Judge
14

15

16
   Appearances:
17
   Counsel for Plaintiff:  Karen Gable
18

19 Counsel for Defendant
     Luis Morales:          Kenneth Weaver, Jr.
20

21
   Court Reporter:         Diane C. Peede, RMR, CRR
22                         United States Courthouse
                           401 West Central Blvd., #4600
23                         Orlando, Florida  32801
                           (407) 615-0305
24
   Proceedings recorded by mechanical stenography, transcript
25 produced by computer.

1                    **P R O C E E D I N G S**

2          **THE COURT:**  Good morning.  We're here in connection

3   with United States versus Luis Morales, case number 6:12-

4   criminal-121.  Ms. Gable on behalf of the United States and

5   Mr. Weaver on behalf of the defendant, Luis Morales.

6          The Court notes Mr. Morales is present in the

7   courtroom.

8          We're here for sentencing.  Is the government ready

9   to proceed?

10          **MS. GABLE:**  Your Honor, we are ready to proceed.

11   And for the Court's planning, we do have ten victims and

12   their family members who would like to make statements to the

13   Court.  They have prepared written statements; and it is the

14   government's request that the victims and their families,

15   when making prepared statements, be allowed to address the

16   Court from the lectern.

17          **THE COURT:**  Thank you, Ms. Gable.

18          Mr. Weaver, is the defense ready to proceed?

19          **MR. WEAVER:**  Yes, sir.

20          **THE COURT:**  All right.

21          I've had an opportunity to review the Presentence

22   Report prepared by the Probation Office.

23          Mr. Mason is here on behalf of Probation.  Thank

24   you, sir.

25          Are there any objections to the factual statements

1     contained in the Presentence Report or the Probation Office's

2     computation of the guidelines, Mr. Weaver?

3          MR. WEAVER:  Your Honor, we object, really, to all

4     of the factual assertions, and therefore the application of

5     the guidelines.

6          Mr. Morales has maintained his innocence in this

7     matter from the very first day he came to court, from the

8     first day I met him, and he still maintains that position.

9          THE COURT:  All right.  Other than that, any

10     objections to the computation of the guidelines by the

11     Probation Office?

12          MR. WEAVER:  No, sir.

13          THE COURT:  All right.  Thank you.

14          Ms. Gable, on behalf of the United States, are

15     there any objections to the factual statements or the

16     Probation Office's computation of the guidelines?

17          MS. GABLE:  No, Your Honor.

18          THE COURT:  Thank you.

19          Luis Morales, on November the 6th, 2012, a jury

20     found you guilty of Counts One through Six of an Indictment

21     that charged you in Count One with aiding and abetting the

22     sex trafficking of a minor, in violation of Title 18, United

23     States Code, Section 1591, and 18, United States Code,

24     Section 2; Counts Two and Three, with aiding and abetting the

25     transportation of a minor in interstate commerce with the

intent to engage in criminal sexual activity, in violation of

Title 18, United States Code, Section 2423(a), and Title 18

United States Code, Section 2; Counts Four, Five and Six

charged you with transportation of a minor in interstate

commerce with the intent to engage in sexual activity, in

violation of Title 18, United States Code, Section 2423(a),

and the jury, after hearing the evidence and deliberating,

found you guilty of those offenses, and our purpose here this

morning, Mr. Morales, is to listen to the United States as

well as information from the victims, to hear from your

lawyer any information that you would like for me to consider

by way of mitigation and the imposition of sentencing,

including an opportunity for you to address the Court, if you

wish to.

I don't know, Mr. Weaver, whether you have any

other individuals that you're going to want to have appear

before the Court or not.

MR. WEAVER:  Yes, sir.  There are six people,

including my client, that want to address the Court.

THE COURT:  Okay.  The way we'll proceed then this

morning is, Ms. Gable, I'll give you an opportunity to help

the witnesses come to the podium and express their

information to the Court that they'd like for me to consider

in connection with sentencing Mr. Morales.

Then, Mr. Weaver, I'll ask you to present any

1  individuals and Mr. Morales, and I'll give you an opportunity

2  to argue.

3          At the end of the victims' presentation, Ms. Gable,

4  I'll hear from you with respect to the government's

5  recommendations for the imposition of sentencing.

6          Then I'll come to you, Mr. Weaver, and we'll hear

7  your information as well as give you an opportunity to

8  respond to any recommendations made by the United States, and

9  we'll proceed in that fashion.

10          MR. WEAVER:  Yes, sir.

11          THE COURT:  All right.

12          MS. GABLE:  Thank you, Your Honor.  Your Honor, the

13  government first calls E.H.

14          THE COURT:  All right.  Let me do this just for the

15  record.  Having heard the objections from the defendant, the

16  Court adopts the undisputed factual statements and guideline

17  applications as contained in the Presentence Report; and

18  insofar as the defendant continues to controvert the factual

19  statements and guideline applications based on his expression

20  of innocence, the Court adopts the position of the Probation

21  Office as stated in their addendum and determines that the

22  advisory guidelines are a total offense level of 43, a

23  criminal history category of II, and a resultant guideline

24  range of imprisonment of life in prison, with a term of

25  supervised release ranging from five years to life.

1    Restitution is determined by the Probation Office in the

2    amount of $35,970.23, a fine ranging from 25,000 to $250,000,

3    and a $600 special assessment.

4              Ms. Gable.

5              MS. GABLE:  Thank you, Your Honor.

6              E.H.:  Good morning.

7              THE COURT:  Good morning.

8              E.H.:  Today is a wonderful day for me, a day I

9    promised my girls that would come and bring closure to our

10   lives, and justice prevailed for us once more.

11             I have really mourned the loss of my little girls

12   for the past two and a half years, and within that time I

13   felt so lost and so angry that it was nearly impossible to

14   breathe.

15             You took them from me and never really brought them

16   back.

17             I had to learn all these different ways to parent,

18   all these new ways to protect and nurture and support them,

19   but how do you really do that?  How do you counsel a child

20   when they're hurting, when you're hurting yourself?

21             Learning on how to open up and talk about all these

22   different things, different adult subjects, and each time

23   realizing that my babies were robbed of so many wonderful

24   things that only they were supposed to experience at the

25   right time and with the right person.

1        The experience was extremely scary.  Seeing them

2   have fears and dealing with all these different emotions all

3   at once, it was very, very difficult.  All I could really say

4   to them was that we were going to get through this together.

5        At times, I felt helpless, unable to understand the

6   reason why.  Why us?  Why?  Why?  Why?

7        I came across a quote that caught my attention.  It

8   was said by President Lincoln, and it says, "I've been driven

9   to my knees many times by the overwhelming conviction that

10  there's nowhere else to go," and that's exactly what I did.

11  I got in God's face and let him take over, let him take

12  control, even though at times I begged just to find this

13  worthless animal and have him to myself for just five minutes

14  and let him feel a bit of what we felt.

15       I want you to feel the pain, the torture, the abuse

16  that you put these children through, really make you feel

17  worthless.

18       There are really no words that can describe all the

19  hurt you've caused, yet you have not broken my spirit.  You

20  have not changed my beliefs in God.  If anything, you have

21  strengthened both.

22       My life, as well as my children's life, will never

23  be the same; and even though we still have a long road ahead

24  of us, it will be better.

25       The girls will move on to better things in life,

1    and without a doubt, they will make the right choices.

2            You, on the other hand, have cut yours short.  You

3    will not be able to choose or even move unless you're told

4    so, and will remain in a shackled world forever until it

5    becomes second nature to you.

6            So I really hope you decide to make better choices,

7    especially in your new home, because where you're going,

8    there's no room for mistakes or second chances.  I'm sure you

9    know this.  It's not your first time around the system or

10   being a member of what we call "club fed."  I see now you

11   have renewed your membership to a permanent one.

12           My children have names.  They have identities.

13   You, on the other hand, have lost yours.  Now you're just a

14   number, a number that means nothing.  You are property of the

15   state.

16           Us, on the other hand, mean a lot, a lot to each

17   other, a lot to the world.  We are no longer victims.  We are

18   the victorious.  We are the brave, the voices of the unheard,

19   and stronger and more determined than ever, blessed in so

20   many ways, but overall thankful that God has given us the

21   strength each day, the strength to overcome memories,

22   nightmares, fears and broken hearts, just to mention a few.

23           So I say to you today you did not win.  Let me

24   clarify that.  You did.  A first-class ticket to hell, your

25   final destination where you will find top-notch suffering and

1   pain.  Misery is your expertise.  So I congratulate you on

2   that.

3           We will definitely move on and each one of these

4   girls will succeed and make a difference in the world.  I

5   truly believe they all already have.

6           So I say to you today and one last time, never,

7   ever forget the names and the faces of those you tried to

8   ruin their lives with your evil ways, and never forget God's

9   power is bigger than anything.

10          It was really, really a pleasure putting you away.

11          Thank you.

12          THE COURT:  Thank you, ma'am.

13          MS. GABLE:  We next call T.M.

14          T.M.:  Good morning.

15          THE COURT:  Good morning.

16          T.M.:  I was just a twelve-year-old girl that loved

17  to sing, dance and play with her teddy bears after school.

18          I loved church.  I thought all churches were filled

19  with good people, but I was wrong.  That all changed when

20  this man came into my life.  My innocence was gone.  My faith

21  changed.  I felt like I lost myself, I lost my childhood.

22          As I'm getting older, I start to understand it all.

23  Your tricks, the way you brainwash people, your dirty plans,

24  it wasn't fair for us to be victims of this mess, but at the

25  end it made us stronger.  It made me a hero to those that

1  couldn't speak.

2         Now, I'm pretty sure you know the saying, "Whatever

3  is done in the dark comes to light;" and I'm here to remind

4  you that today is your moment to shine bright in the deep

5  spotlight you've created for yourself and air out all the

6  dirty laundry.

7         It's a shame how you put me and so many wonderful

8  girls through this, but I'm glad we've joined forces to stop

9  you.  No more worries about who's your next target.  No more

10 dwelling on the past.  I can finally say it's over.

11        I can enjoy life to the max again.  I always

12 thought I was going to be miserable.  I thought my parents

13 would be disappointed in me, but luckily I came over those

14 obstacles.  All those nightmares I've had because of you,

15 those nervous breakdowns I got whenever I saw someone similar

16 to you or thought I heard your voice, I finally overcame.

17        I no longer let you affect me anymore because I

18 know that you no longer have a chance in the world,

19 especially around females.

20        Now, to end this letter, I'd like to give a special

21 thanks to my family and everyone that supported me in making

22 this day possible.

23             THE COURT:  Thank you, ma'am.

24             T.M.:  Thank you.

25             MS. GABLE:  We next call D.M.

1          THE COURT:  Good morning.

2          D.M.:  Good morning, Your Honor.

3          Many people can look at a person and judge on the

4    color of their skin, their clothes or even by how they walk.

5    But can you really tell what someone has gone through just by

6    looking at them?

7          Yes, this was a struggle that I thought I couldn't

8    overcome.  However, through all the pain and trauma, I am a

9    strong, independent young lady that has faced this obstacle

10   with a positive outlook on life.

11         Ever since this experience, I am so much closer to

12   my family and appreciate them for their support.  I am a

13   positive influence, not only to friends, but to faculty and

14   staff as well.

15         I will not let my past define who I am today.

16   Through all the pain, trauma and anger that I have overcome,

17   I will still be the strong, independent young lady that has

18   faced this obstacle with a positive outlook.

19         THE COURT:  Thank you, ma'am.

20         D.M.:  Thank you, sir.

21         MS. GABLE:  We next call N.M.

22         THE COURT:  Good morning.

23         N.M.:  Good morning.  I'm here today to

24   address "Tito" Morales --

25         THE COURT:  Pull that microphone to you just a

1    little bit.  Thank you.

2              N.M.:  I'm here today to address Tito Morales on

3    the impact he had on my life.

4              You were a huge part of my life.  I wanted

5    everything you had and more, and then you abused it.  I was

6    hurt and upset because how many families got hurt and broken,

7    sad because of the impact it had on my life, angry because

8    you took advantage of my innocence, but most of all,

9    disappointed because my trust was put on a high authority and

10   was betrayed.

11             But I won't let that stand in the way of me moving

12   forward, moving ahead to a better life.

13             I just want to let the other girls know that even

14   though this terrible thing has happened to us, we can

15   overcome this together.

16             Over the past years I have learned that God only

17   gives his hardest trials and tribulations to His best

18   warriors.  With that being said, I am able to overcome this

19   damage you put in my life.  Although it has been one of my

20   strongest obstacles yet to overcome, it has made me stronger

21   and firm in what I believe in.

22             One of the things you had taught was that there

23   will be false apostles and prophets, but I never thought you

24   would be one of them.  But I feel for the other girls,

25   including my sisters, because as it was for me, I know how

they felt and how hard it was to endure the shame you put on us.

        This experience made me stronger and wiser, because most of the people here today, except you, have unconditionally supported and cared for us, and I would like to thank them for that.

        You must not have been thinking ahead, because you forget that there is a higher justice yet to come your way with the Lord, our Father.

        As it has been mentioned before, the enemy of the brother is on satan's team.  So when you go see your teammate, I hope you enjoy your stay with him.

        Thank you.

        THE COURT:  Thank you.

        MS. GABLE:  We next call M.R.

        THE COURT:  Good morning.

        M.R.:  Good morning.  I'm here today to make sure this man goes to prison and stays there forever.  His actions have affected my life in a terrible way.  While he was in federal custody, I didn't feel safe.  I was always feeling like something was wrong, like if he was going to come after me and he was going to hurt me again.  I didn't feel safe walking anywheres or going anywheres alone; but now that you have this disgrace for a human, a lame excuse for a man behind bars, I know for a fact he can't hurt me or anyone,

1   none of the girls, ever again, and I would like to keep that
2   fact true forever.

3          He's a danger to society, without a doubt.  If he
4   is kept behind bars for life, this world would be a better
5   place to live in.  No one knows what else he is capable to
6   do; and now that he's behind bars, everybody -- I feel like
7   everybody is safe.

8          Even though at one point I felt like my faith was
9   affected and everything in my life was just done with, I know
10  that God has helped us all through it.

11         And I wanted to tell the girls, the other girls,
12  that now God is going to do the justice that He has to do.

13         THE COURT:  Thank you.

14         MS. GABLE:  W.R.

15         THE COURT:  Good morning.

16         W.R.:  Good morning, Your Honor.  As I think of the
17  different ways that this has affected our family, the first
18  one is our faith.  Our faith was affected.  We thought of
19  this man as the next thing to God.  We thought of this man so
20  highly.  We loved him.  We honored him.  We reverenced him.
21  We trusted him.  I trusted him so much with my daughter, my
22  only daughter.

23         It has affected our nights, sleep, having to have
24  our child wake up with nightmares, having to not be able to
25  sleep as a parent, thinking of what could I have done

1  different to avoid this happening to my daughter.

2          Low self-esteem.  We struggled with low self-

3  esteem.

4          My daughter, M.R., has had to go through counseling

5  to be able to get to where she's at today.  She's a

6  beautiful, talented, smart little girl, and she had to

7  struggle with this.

8          Us as parents, we've had to struggle with low

9  self-esteem, because we felt that we were nobody.  We felt

10  that it was so despicable what this man did to our child and

11  that we were not able to do anything to stop that.

12          Our relationship with others.  It has been hard for

13  us to relate with other people without second-guessing if

14  they are just like this man.

15          We struggled with his mind games.  I think I still

16  struggle with those mind games, mind games of making us feel

17  that there was nobody more than him.

18          Christmases.  While there are parents out there

19  looking for a gift for their child and for the best Christmas

20  that they can have, I find myself for our second Christmas

21  trying to build new memories for our daughter because she had

22  no desire of celebrating Christmas.

23          Every Christmas will be marked with what this man

24  did to my daughter.  That is a holiday, an American holiday,

25  a Christian holiday, and it has been marked.  We've tried so

1    hard this past Christmas to do something new and install new

2    memories into our daughter's life.

3        Like if it wasn't enough, we come here and there is

4    no remorse from this man, no remorse.  That is like the last

5    punch on your gut.

6        He was very good with quotation from the Bible for

7    everything.  Now I want to leave one.  Romans 13 says laws of

8    the land, subject to governing authorities; and whoever

9    resists against authorities, resists what God has arranged.

10   Divine order.

11       Your Honor, I ask for the maximum sentence for this

12   man.  He is a danger to society, and I ask and plead with

13   this Court and with you to please give him the maximum, that

14   he will not be able to see the day of light again.

15           THE COURT:  Thank you.

16           MS. GABLE:  Now P.R., who is M.R.'s father.

17           THE COURT:  Yes, sir.  Good morning.

18           P.R.:  Good morning, Your Honor.  I'm P.R., M.R.'s

19   father.

20       What I have to say is that there was a movie that

21   Stephen Segal did a long time ago, his first movie, was Above

22   the Law.

23       And this man always thought that he was above the

24   law.  It got to a moment that he even thought that he was

25   even, like, above God.

1        When our daughter came back, she came back

2    different.  She wasn't the same, and we noticed that -- we

3    noticed the hurt inside of her.

4        He destroys lives.  He tried to destroy my -- my

5    marriage.  He tried to destroy my relationship with my

6    daughter.  He tried to destroy me as a man, but justice is

7    always done.

8        I cannot absolve him.  I cannot condemn him; but,

9    Your Honor, you have that in your hands today, to put this

10   man away so he cannot hurt no more anybody; that where he's

11   going to be, he'll know what it is to be a victim and what it

12   is to be hurt.  He will know what it is to be tortured; that

13   every day that he's in there for life, this torture will be

14   that he could have done things right before the Lord and he

15   didn't.  He just did what he wanted and he used the name of

16   the Lord in vain.

17       All these girls that are here today, including my

18   daughter, they're like eagles.  They've been hurt, but

19   they've gone up and they're going to keep on going up and

20   they're going to change their lives and they're going to

21   improve their lives and they're going to grow up and they're

22   going to be able to help others to not fall in the same trap

23   that this man did.

24       Your Honor, I just ask you today that you could

25   give him the maximum so that he can learn a lesson, that he

can learn that he is not a dictator, and that he can learn

that we're humans and that we hurt and that we have emotions;

and I put that in your hands, Your Honor.  Thank you for this

moment.

THE COURT:  Thank you, sir.

MS. GABLE:  Now A.M.

Your Honor, A.M. is O.A. and N.B.'s mother.

THE COURT:  All right.

Good morning, ma'am.

A.M.:  Good morning, Your Honor.  First and

foremost, I would like to say thank you to all the people

that have worked on this case on behalf of us and the other

families.  I can't say it enough.

It has been a long journey for my daughters and my

entire family.  My younger son has gone through counseling

and therapy for years.  Now he's 21 years old and still cries

because he thought that he lost his sisters and brother after

we left Florida.  He has -- he was six years old at the time.

My other son was also affected, because he at some

point blame himself for not being able to protect his family.

He was ten years old at the time.  Now he is 25 years old and

taking pastoral counseling at this time.

My daughters, I cannot begin to explain how badly

he has affected their lives.  My oldest daughter have to face

counseling before getting married and much more, and my

1  youngest daughter had a difficult time trusting and being

2  able to have friends along the years.  And for me, the grace

3  of God has been able to sustain me, giving me wisdom and

4  understanding to give keep my family together.

5        Again, I say thank you to you, that finally someone

6  paid attention and brought justice to my family and the

7  others that were incredibly damaged through the actions and

8  decisions of one man.

9        My heart goes to them because I know how difficult

10 it could be.  My prayers are over them.

11       Once again, I say thank you because justice

12 prevail.

13       THE COURT:  Thank you, ma'am.

14       MS. GABLE:  We now call O.A.

15       THE COURT:  Good morning.

16       O.A.:  Good morning.  I have to be honest and say

17 that as I prepared myself for this, I hadn't realized how

18 angry I truly was; and still today, I struggle with all of

19 this and how it has affected not only me but my family as

20 well.

21       For many years I allowed the things that were said

22 and done to me as a child by Tito Morales dominate a major

23 part of my life.  I even began to believe that they were

24 true.  I believed that I was ugly, that I was stupid and that

25 I would never amount to anything, because if a man of God

1  said it, it had to be true.

2        I would start something and never finish it.  I

3  questioned the people I meet, and sometimes I think that any

4  man could be capable of such behavior.

5        As a mother, I can say that I am overprotective of

6  my child, and every night I can't help but pray that this

7  never happens to her.

8        Through my time of prayer the past couple of months

9  I asked God to guide me and instill the right words in me to

10  say.  Conflict grew within me because I couldn't bring myself

11  to a place where the thought of being free from all of this

12  would be possible; but I feel that throughout my process of

13  healing, God constantly reminds me of His never-ending

14  mercies and His forgiveness.

15        To find the ability within myself to forgive the

16  man who tried to break my spirit and ruin the possibilities

17  of hope, the man that claimed everything he did was done

18  through God and his word; but I am here today because I will

19  no longer allow any of this to control or influence my life.

20        I am ready to let it all go and move on so that God

21  can continue to work within me and mend many areas that have

22  been broken.

23        With that being said, I would like to say that I

24  forgive you, "Tito" Morales; and that in no way, shape or

25  form justifies the things you have said and done to me or

1    anyone here, for that matter.  That just means that today,

2    through God and His mercy, I rid myself of you.  I have

3    waited many years for this day, and I can finally say that

4    through God, justice has been served, and you don't win.

5              THE COURT:  Thank you.

6              O.A.:  Thank you.

7              MS. GABLE:  Finally, Your Honor, we have N.B.

8              THE COURT:  Good morning.

9              N.B.:  Good morning, Your Honor.

10             When I sat in rooms where the topic of rape or

11   molestation came up, I always felt uncomfortable.  I thought

12   that somehow my experiences from my childhood were obvious on

13   my face or would show in my body language.

14             Over time, I have had to deal with the strong

15   feelings of shame, anger, betrayal and bitterness.  Shame

16   because I felt like there was something wrong with me, like

17   somehow I provoked the things that happened to me.  Even at

18   twelve, I felt like I should have been smarter, I should not

19   have been so afraid.

20             Anger because I felt robbed, like my happiness was

21   stolen.  I did not feel comfortable around men.  I even felt

22   fear and anxiety around friends and family.

23             There was nothing anyone could say or do to make me

24   feel better.  I felt hopeless.

25             Betrayal because I had to face my mother and church

1    family and a tell them that the person who said was a friend

2    and a man of God had violated my trust, and theirs, because

3    of the things he did to me.

4          I felt betrayed by people who had nothing to do

5    with his choices to hurt me.  Questions flooded my mind, how

6    could they not know?  Weren't there signs?  Why did no one

7    come to my rescue?

8          Bitterness because I felt as though I could never

9    have the things other girls would have, like marriage or a

10   family.  I did not think I would be loved or could love.

11         I was consumed with all of these feelings for many,

12   many years, so consumed that they drove me.  I was driven by

13   all of these negative emotions.

14         I had an experience once in college that changed me

15   drastically.  I was sitting in a women's studies course and

16   the discussions focus was rape.  After reviewing the

17   presented articles, a fellow student spoke.  She stated that

18   she felt sorry for women who experienced such horror and she

19   was sure that these victims could not function in society or

20   be good wives or even good mothers.  She finished by saying

21   that anyone in that situation must be damaged as a result of

22   it.

23         That day, as a junior in college, I cried for the

24   first time in front of students in many years since grade

25   school.  Even though no one knew in that room why, I felt for

sure that she was talking about me.  It was then that I decided to seek help, but I didn't go through with the decision to see someone until I was getting married.

Now, after many years of struggling with blame and guilt, I am at a place where I have stopped focusing on placing blame or pointing fingers.  I stopped blaming God for the choices made by a man.  I stopped asking why or how and decided to move forward.

So every day I push.  As a result of these experiences, I tell myself to push.  Some days are more difficult than others, but I push.  I push because God gives me the strength to, because God has given me the courage to forgive.  Forgiveness is what has propelled my healing and my relationship with others.

I push because I have been blessed with a beautiful 18-month-old daughter and a loving husband.  I push because I have had an amazing family help me cope and mend my scars as we have all dealt with the effects of abuse and the many layers that have come with talking openly about it.

Finally, I push because, as a counselor of sexual assault and domestic violence, I have been blessed with the opportunity to remind men and women, young and old, that they can live a life after abuse.  I remind them, as I remind myself every day, to push, push past the victim mentality and think like a survivor.

1          Thank you.

2          THE COURT:  Thank you.

3          MS. GABLE:  Your Honor, that concludes our victims'

4     statements.

5          THE COURT:  All right.  Ms. Gable, I'll now hear

6     from you as it relates to the government's recommendations

7     for imposition of sentence.

8          MS. GABLE:  Yes, Your Honor.  Your Honor, the

9     United States is requesting this Court to sentence the

10    defendant, Luis Morales, to a life term of imprisonment

11    followed by a life term of supervised release, as suggested

12    by the guidelines in this case.  Such a sentence, Your Honor,

13    will reflect the seriousness of this offense.  It will

14    provide deterrence to both the defendant and others in the

15    community for committing this egregious crime.  It will

16    provide just punishment for the defendant, and most

17    importantly, it will protect children from further crimes of

18    the defendant.

19          Your Honor, it's harder to imagine a more serious

20    crime than that which the defendant has committed in this

21    case.  You heard from three families, six victims who told

22    you how this defendant's actions and abuse destroyed their

23    lives.  They told you, and it was a theme that was resonant

24    through all of their statements to you, that he deprived them

25    of their dignity; that he betrayed them; that as a result of

his conduct, they felt shame, humiliation, embarrassment;

that all of them have had to go through counseling in order

to deal with these issues.

This defendant -- the seriousness of this offense

is magnified by the fact, Your Honor, that these were

children, young children, who -- you know, a child, they are

the most vulnerable in our society because they, by nature,

are very trusting and they trust adults and they look to

adults to take care of them and to protect them, and that's

what these children did with this defendant, and he abused

their trust; and rather than protect them, he abused them.

More heinously or equally as heinous, Your Honor,

is all of these children have very deep faith, and he took

advantage of their faith in order to abuse them.

As you heard from all of the parents of these

victims, he was able to gain access to them and groom these

parents because he, too, took advantage of the parents' faith

in order to gain access to these kids.

The offense, Your Honor, is extremely serious and

militates in favor of a life sentence.

Regarding the history and characteristics of this

defendant, Your Honor, I've read his P.S.R.  He's led a very

unremarkable, undignified life.  He has contributed nothing

to society.  He has barely worked at all.  He has a criminal

history.  He is, by the evidence in this case, extremely

narcissistic, very manipulative; and scarily, Your Honor,

this defendant abused several of these children in public,

and that suggests an extremely high level of dangerousness on

the part of this defendant, that he was willing to do that in

public.  It really shows how narcissistic and manipulative he

is.

With respect to just punishment, the defendant

committed a very, very serious offense, and the guidelines

actually top out at life and they accurately reflect the

seriousness of the offense and the need for just punishment.

You've heard from each of these victims and how

their request to you is that you sentence the defendant to

the maximum.

Finally, the need to protect the public is

extremely strong in this case.  This defendant has been

abusing children for at least 15 years of which we know of.

As I've stated to the Court previously, he knows no

bounds.  He is not only physically and sexually abusive, but

he is verbally abusive to young people.  He has demonstrated

no remorse whatsoever.  He has continued to maintain his

innocence in this case.  He is extremely dangerous, Your

Honor.

So, for those reasons, we ask the Court to sentence

the defendant to a life term of imprisonment followed by a

life term of supervised release.

1              THE COURT:  Thank you, Ms. Gable.

2              Mr. Weaver, would you like to be heard in

3    mitigation?

4              MR. WEAVER:  Yes, sir.  We have several witnesses

5    that want to speak.

6              THE COURT:  Okay.

7              MR. WEAVER:  Would you allow me to present them at

8    this time, Judge?

9              THE COURT:  Yes.  As I mentioned to you before,

10   I'll be happy to hear from anybody that you would like for me

11   to hear from in connection with mitigation; and then if Mr.

12   Morales wants to address the Court and you want to make

13   argument, you can do that in any order you like; but I would

14   like to leave Mr. Morales's statement and your argument for

15   the end.  So let's go ahead and take the witness statements

16   first.

17             MR. WEAVER:  That's fine, Judge.  First of all, I

18   would like to call Brian Morales.

19             Please state your name and tell the Court your

20   relationship to Mr. Morales.

21             BRIAN MORALES:  My name is Brian Morales, and I'm

22   the grandson.

23             THE COURT:  Good morning.

24             BRIAN MORALES:  Good morning.  How are you doing?

25             First off, I'd like to say I know who my

```
1    grandfather truly is and what he stands for, and he dedicates
2    his life to Jesus Christ and the work of Jesus Christ.  He
3    doesn't sugarcoat.  He doesn't make anyone happy.  He says
4    like it is straight out of the Bible.
5            And I've been on countless trips, I've spent all my
6    younger years traveling.  I know what really goes on on these
7    trips and what they do for people and how they help people,
8    and I think this whole thing is absurd and I would hate to
9    see him behind bars, because I know that deep down what he
10   loves the most is to preach, and it's not a profession.  It's
11   a passion, and that's what makes him happy is preaching and
12   helping people.
13           That's pretty much it.
14           THE COURT:  Thank you.
15           MR. WEAVER:  Thank you.
16           Next I would ask Alyssa Morales, who's 18 years
17   old.
18           Please state your name and your relationship to Mr.
19   Morales.
20           THE COURT:  Good morning.
21           ALYSSA MORALES:  Good morning.  Alyssa Morales, and
22   granddaughter.
23           THE COURT:  Is it Alyssa?
24           ALYSSA MORALES:  Yes.  To start off, I'd like to
25   say, like, my grandfather is probably one of the strongest
```

men that I know, yet he preaches the gospel, but he's most influential with, like, along with my grandmother.  They both have just brought -- they raised me and my brother Brian.  They've taught us the ways of the word and the ways of the word as established in the Bible.  It's not sugarcoated.  It's not brainwashing.  It's nothing like that.

We've traveled to multiple places, like, over seven different places, and the trips were never -- like, it was always joy.  It was always comfort.  I've never felt uncomfortable.  I've never felt, like, in any position I should never go to my grandfather.  Like, he was always there to give us advice.

He's just a happy person to be around, along with the ministry.  Like, it's just always happy people.  And, I mean, it's -- the Lord only knows the intentions of the heart, and that's all that can happen -- I can say.  Thank you.

THE COURT:  Thank you.

MR. WEAVER:  May I inquire briefly?

THE COURT:  Surely.

MR. WEAVER:  Have you seen your grandfather help people through his preaching?

ALYSSA MORALES:  Yes, I actually have.

MR. WEAVER:  All over the world and in this country, both?

1          ALYSSA MORALES:  Yes, sir.

2          MR. WEAVER:  You know of many examples of that?

3          ALYSSA MORALES:  Yes.  I've seen multiple things

4     with my eyes.  I've seen -- I've seen, like, people that

5     actually, like, they go to my grandfather for advice and

6     always -- it's never a bad thing.  It's always, like, Apostle

7     "Tito," and it's always good.  It's never been bad.

8          MR. WEAVER:  So you heard Assistant U.S. Attorney

9     Gable say that he's really not contributed to society in any

10    way?

11         ALYSSA MORALES:  He's not harmful at all.

12         MR. WEAVER:  Okay.  Do you think that he's made

13    contributions through his preaching and helped people?

14         ALYSSA MORALES:  Yes, sir.

15         MR. WEAVER:  Thank you.

16         THE COURT:  Thank you, ma'am.

17         MR. WEAVER:  Next I would call Jonathan Morales.

18         THE COURT:  Good morning.

19         JONATHAN MORALES:  Good morning, Your Honor.

20         MR. WEAVER:  Please state your name and tell your

21    relationship.

22         JONATHAN MORALES:  Jonathan Morales.  He's my

23    grandfather as well.

24         Basically, when I heard her say that he's, you

25    know, been a menace to society, all I've ever seen him do my

whole life is help society.  I've seen kids grow up, adults

come from nothing and having something to live for my entire

life.  He's helped thousands and thousands of people.  And,

basically, I grew up around him.  All I've ever seen him is

on his face praying from morning to two in the afternoon,

reading the Bible religiously.  And me myself personally,

I've always wanted to be like him.

And to take him away from society and the people --

there's many people out there that care for him -- I mean, I

think it's ridiculous.  I think, you know, the accusations

all seem to be the same, and it would be hard to tell exactly

what happened.  And to take away somebody like this who helps

and motivates people in their daily lives, I think that is

taking away a great piece of society.

And for her to say that he's never helped society,

I mean, he's only traveled the world, preached the gospel,

and from morning to night he's always had his head in the

Bible and always studying.  He's always taught me how to live

a great life and to serve God.  That's basically it.

THE COURT:  Thank you.

MR. WEAVER:  Next I would call Luis Morales, Jr.

THE COURT:  Good morning.

LUIS MORALES, JR.:  Good morning, Your Honor.  I'm

Luis Morales, Jr.  I'm his first son, first-born son.

Basically, I'd like to just say that, you know, my

1  dad, you know, did go through his things in the past and he

2  did time for, you know, his crimes in the past.

3          And growing up in Connecticut, I was there the

4  whole time, during the time he did jail, before even the

5  ministry started; and, you know, at the time I made mistakes

6  in my own life and I kind of followed my dad's path, making

7  mistakes and getting in trouble.

8          After my dad did his time, he came to live with me

9  and he was truly the example that I needed, because I didn't

10 really believe in the Lord, you know.

11         We as people, we can fabricate things on paper and

12 send people's mind sets in the direction that we want them to

13 go; but, realistically, I come here and I speak from the

14 heart, and I tell you my dad has truly been an example in my

15 life.  All we do is preach the word.

16         And I come from the negative background that I came

17 from growing up, you know, when my dad was making those

18 mistakes; but when he came to the Lord, at first, I didn't

19 trust my dad because, you know, I came out of a dysfunctional

20 family.  My parents were divorced and stuff like that.  But

21 as I started to read the word of God and apply it to my life,

22 I noticed that what my dad taught and what he preached, it

23 was the truth.

24         And a lot of people, when you're serving the Lord

25 and you speak the truth, they don't want to accept it.  They

1  want to fabricate it to apply it to their own life, and it's

2  not our way.  It's not the court's way.  It's the way the

3  Lord wants it, because he is the final authority in

4  everything.

5          Your Honor, I thank you for the opportunity to

6  talk, and I tell you that I truly do not believe that my dad

7  did any of these accusations, any of them.  My dad did ten

8  years for his mistakes.  He came out.  My children were two

9  years old and five years old.  He lived with me.  I was 17

10  years old, Your Honor.

11          He raised them while me and my wife worked.  And,

12  you know, we came here to Florida to establish our lives and

13  establish our ministry; and, like I said, I've been through

14  the whole time my dad went through his trials and

15  tribulations up, until right when we started the ministry,

16  and I've been there ever since day one.

17          And, you know, when you choose to live by the word

18  of God and follow the ways of the Lord, a lot of people don't

19  like it, you know, when you're trying to help them deal with

20  the issues of their life.

21          All I can say, Your Honor, is I love my dad and I'm

22  a true believer of consequence; but, you know, when

23  everything is just hearsay and there is no true evidence, I

24  mean, it's out of my hands.  It's in your hands, Your Honor,

25  and I ask you for mercy.  And that's all I have to say.

1   Thank you.

2              THE COURT:  Thank you, Mr. Morales.

3              MR. WEAVER:  Next I would call Linda Morales, Your

4   Honor.

5              THE COURT:  Good morning.

6              LINDA MORALES:  Good morning, Your Honor.  Thank

7   you for allowing us to talk.

8              THE COURT:  Surely.

9              LINDA MORALES:  And I don't know where to begin

10  other than I'm also a federally retired -- I don't know if

11  you got my letter.  Did you get my letter?

12             THE COURT:  I did.

13             LINDA MORALES:  Thank you.  That's what I wanted to

14  know.

15             I have listened to all these people.  If I hadn't

16  ministered to their stepfathers and their -- their -- each

17  one of them and all their families, I would maybe tend to

18  believe what they had to say.  I would, because they sound

19  very convincing, Your Honor.  But I ministered to their

20  lives, every single one.  Not A.M.'s daughters, because she

21  was the fiancee of my husband before I met him.

22             And this is how these accusations 15 years ago came

23  about, and the prosecutor in Daytona very clearly proved that

24  their stories didn't even match up, and now they have brought

25  them back.

1          Even Agent Smith or Brown, or whatever, the F.B.I.

2   came into my home.  He went through every computer, every

3   hard drive, every closet, every drawer, every -- the cars, he

4   went through the shed in the back.  We don't even have one

5   item of perversion.

6          My husband lives for Jesus Christ.  If you were to

7   take a life, take mine and put me in jail, because I know how

8   he lives.  Every day for the Lord.  He's been an inspiration

9   for me.  And there's thousands, and I'm not exaggerating,

10  thousands of people in Central America that are constantly

11  calling me, telling me, "We've got you guys covered.  We know

12  who you are.  We know how our lives have been changed by the

13  Lord Jesus Christ through your lives, through Apostle 'Tito,'

14  and through your life" and they give glory to God.

15         They don't -- they don't put us on a pedestal, Your

16  Honor.  We're nobody, but we have the word of God inside of

17  us and we teach people the truth and we teach people not to

18  compromise, not to water it down.

19         And many people that don't want to do it, you know,

20  God -- I want to give an example.  Maybe people can't

21  understand this, but God told Abraham to sacrifice his son.

22  God didn't want him to kill his son.  He just wanted to make

23  sure he wasn't in his heart, and that's what we've told some

24  of these people, to make sure they didn't have their kids,

25  their husbands, their wives in their heart, and they have

1    totally turned against us.

2         And, Your Honor, I don't know why they've come up

3    with these lies, but I'm with my husband 95 percent of the

4    time, if not more, traveling, ministering.  He's always home.

5         He has been sick, very sick, for the past three to

6    four years.  His blood sugar has been extremely high.  They

7    tried to put him on medication, and it just made him worse,

8    where he would pass out.  So he didn't stay on medication.  I

9    was trying herbs and vitamins.

10        But my husband, I'm telling you under oath in front

11   of God, the Father, the Son and the Holy Ghost, that he has

12   been a tremendous example for me; and I would rather you put

13   me away than to take him, because I know how many lives he's

14   affected, because he has a boldness for the gospel of Jesus

15   Christ.

16        I know in the past -- they're trying to use the

17   past, but they proved those were lies.  They proved those

18   were lies.  Why didn't it proceed?  Because it wasn't the

19   truth.

20        I ask you, Your Honor -- I have many, multiple

21   pictures of these young girls -- how they could have been so

22   happy two weeks later.

23        THE COURT:  Ms. Morales, the jury has already

24   convicted your husband.  So why don't you address your

25   comments to the issue of sentencing.

1          LINDA MORALES:  Okay.  Well, I want to say, Your

2     Honor, I've never seen a court system put somebody in prison

3     without any evidence.  If you can or anybody can do that

4     without really realizing there's absolutely no evidence to

5     prove their words and our words against theirs, I have never

6     seen a justice system like that.  I've never seen a justice

7     system like that, Your Honor.  I haven't.

8          We said innocent until proven guilty.  We have

9     evidence to prove the innocence.

10         THE COURT:  Ms. Morales, the jury has already

11    convicted your husband.  If you have comments that go to --

12         LINDA MORALES:  Okay.  I want to say this.

13         THE COURT:  If you have comments --

14         LINDA MORALES:  By -- okay.

15         THE COURT:  Do not interrupt me.

16         LINDA MORALES:  Forgive me.

17         THE COURT:  If you have comments that go to this

18    issue of sentencing, I will hear them.  I am not going to

19    hear you any more protest your husband's innocence.  The jury

20    has convicted him.

21         LINDA MORALES:  Your Honor, he is an asset to

22    society.  He's an asset to the world that wants to hear the

23    truth about the gospel of Jesus Christ.

24         There are many, many, many, many, many, many

25    people, and I'm not exaggerating, out there that are waiting

1  so that he can minister to them. They've asked for us to

2  come and they know who we are. That's what I want to say,

3  Your Honor.

4        THE COURT:  Thank you.

5        MR. WEAVER:  Your Honor, Mr. Morales, the

6  defendant, would like to speak directly to the Court.

7        THE COURT:  All right. Please come to the podium.

8        MR. WEAVER:  Right here. State your name. Address

9  your comments to the Judge.

10        THE DEFENDANT:  I'm Luis Morales.

11        THE COURT:  Good morning, Mr. Morales.

12        THE DEFENDANT:  Thank you, sir, for allowing me to

13  speak. They accusing me of this. They already have found me

14  guilty. They accuse me of he said, she says.

15        And I was reading -- what do you call this? -- the

16  Presentence Investigation; and if you read it, Your Honor,

17  this says right here -- may I speak, Your Honor? It says

18  Rebeca was recruiting people to have sex engagement.

19        They don't have no proof. They don't have nothing

20  for that, because we didn't do that, Your Honor.

21        Your Honor, they also said -- stated that I'm not

22  trying to, but they stated that -- Raul stated that -- he

23  didn't know what he state. In the P.S.I., he says that he

24  stay at Rebeca's house.

25        D.M. says that she saw me put my hands around --

around T.M. on our way to Connecticut. On our way to
Connecticut, we didn't -- Raul stated that we drove straight
up.

THE COURT: Mr. Morales, I'm happy to hear from
you. You have an opportunity to address the Court.

Let me remind you, as I just reminded your wife,
the jury found you guilty of these charges. So you need to
speak to me on this issue of sentencing.

I understand that you continue to maintain your
innocence, and that's fine. That's certainly your
prerogative to do that. But I need you to address your
comments to me as it relates to what you think the Court
should do in terms of the imposition of sentence,
understanding that you deny that you committed these
offenses; but it does no good at this stage in the
proceedings to argue that the jury's verdict was unsound,
because the jury has already convicted you.

THE DEFENDANT: I understand that, sir. I
understand that, but they said that -- they said that she was
in charge -- I was in charge of her.

I got a police report and records of the phone that
her father called me to go get her. So I'm asking you,
mercy, mercy in the name of the Lord, Jesus Christ, because
if I did what they said I did, I should have all these
records.

1          Everything, I have the records.  My lawyer, okay, I

2     told him I was very sick.  I told him to -- to -- to get the

3     doctors and everything, and he didn't.

4          So I ask you for mercy, because the fact that I

5     haven't had sex and even desire for it eight years.  So I --

6     my lawyer did not represent me the way -- I should have

7     listened to you and listened to the prosecutor.

8          MS. GABLE:  Excuse me, Your Honor.  Again, I will

9     object to Mr. Morales's statement.  I certainly don't object

10     to him addressing the Court regarding the issues of

11     sentencing, but this is not a time for the defendant to make

12     his case against his lawyer.

13          THE COURT:  All right.

14          That's correct, Mr. Morales.  As I've pointed out

15     to you, we're here for the issue of sentencing.  If you have

16     comments that you want to address to my attention that relate

17     to what the Court should do in terms of the imposition of

18     sentence, this is the time for you to speak to that.

19          It's not the time for you to speak to whether or

20     not you think your lawyer effectively represented you and

21     it's not the time for you to speak to the facts that support

22     or don't support the conviction, because that's already --

23     that's already occurred; and you have the appellate courts

24     that you can make your appeals to as it relates to your

25     claims with respect to the competence of your lawyer, how you

1  were represented as well as the jury's conviction.

2          So you need to speak to me on the issue of

3  sentencing.  If you have things that you want me to

4  consider --

5          THE INTERPRETER:  Well, Your Honor --

6          THE COURT:  -- I'll give you that opportunity.  I

7  just want you to understand what this proceeding is not,

8  okay?

9          THE DEFENDANT:  Okay.

10          THE COURT:  It's not an appeal of the jury's

11  verdict and it's not an opportunity for you to try the

12  question of whether or not you received effective

13  representation during the course of your trial.  You will

14  have an opportunity at some point to address those issues,

15  but this day is not that day.

16          THE DEFENDANT:  Okay, Your Honor.  Well, I'm asking

17  you -- the Lord will speak to you and have mercy upon my

18  life, because we will have to be accountable to God to any

19  decision that we make; and I want you to make -- I'm asking

20  you by the mercy of our Lord and Savior, Jesus Christ, that

21  you make the right decision.

22          Anger gets you nowhere.  I'm trying to say that

23  have mercy on my life, because me going to prison for life, I

24  didn't -- I mean, again, I ask you that you would consider

25  that -- consider the possibility, even though they found me

1    guilty, to say, hey, have mercy on my life, because they --

2    they said that I have no remorse.  I am remorse.  The things

3    they said, but I'm not guilty whatever they say.

4            So I'm asking you, Your Honor, to have mercy upon

5    me, because I got police record of saying.  So I ask you to

6    have mercy upon me, please.

7            THE COURT:  Thank you, Mr. Morales.

8            Mr. Weaver.

9            MR. WEAVER:  Yes, sir.  Thank you, Your Honor.  I

10   understand, Your Honor, that the Court is faced with an

11   advisory recommended guideline sentence of life, a request of

12   a life sentence from the government attorney.

13           I would suggest to you that that is unnecessary in

14   this case.  The guidelines may not accurately reflect the

15   nature of this case.  I know that the Sentencing Commission

16   is presumed to have anticipated this situation, but every

17   case is unique.

18           He faces a 15-year minimum mandatory in Count One,

19   I believe, and I would suggest to you that that is more than

20   enough -- he's 58 years old now, and that would put him out

21   some time during his 73rd year -- followed by community

22   supervision, some sort of parole or probation to protect the

23   interest of society would satisfy the need to protect society

24   and be a merciful sentence for Mr. Morales.  He would receive

25   significant punishment as well as not being a threat to the

1  community.

2          The Court can order him to not be around children,

3  to not preach to children.  You know, there's plenty of

4  precautions that the Court could take in fashioning a

5  sentence that would allow him to have another chance.

6          In my comments, I mean no disrespect to anybody,

7  Your Honor, including the Court and the victims in this case;

8  but I would remind you that all over the country people get

9  far less than life for killing somebody.  It is a very harsh

10 sentence when there's been no death, so to speak.  And I know

11 this is federal court and not state court, but all over the

12 country people are sentenced to far less than life

13 imprisonment for causing a death of another person, which

14 terminates their life completely.

15         These young ladies, who have spoken to the Court,

16 have a chance to go on with their lives and lead a normal

17 existence, if they're able to overcome the problems that they

18 allege they've encountered in this case.  So nobody's life

19 was taken, and the Court now has to make a decision whether

20 or not to take Mr. Morales's life.

21         As far as Ms. Gable's comment that he's led an

22 undignified life and not contributed to society, I don't

23 think that that is correct.  I think that there are people

24 all over the world, as you've heard testimony about today,

25 that would say that he has spoken to them and touched their

1    lives through their faith in religion and God.

2            There are people that stand by him.  Some of them

3    came to court to testify, that they know his character, that

4    he would never do anything like he's done -- or like he's

5    accused of doing.  They stand by him because they've seen him

6    help many people.

7            So, as to no contribution to society, I think

8    there's plenty of evidence to contradict that statement.

9    There has been a contribution to many people, and I

10   understand that there are at least ten people here who

11   disagree with his contributions to their lives.

12           He maintains his innocence, Your Honor.  I

13   understand he's been convicted by the jury, and the Court

14   should always give pause to a case where a defendant

15   maintains their innocence from day one to the very end.

16           There are cases, as the Court knows, where

17   exoneration is the result years after punishment is imposed;

18   and I don't expect D.N.A. evidence to be coming forward in

19   this case, but as I spoke to the jury about earlier, the case

20   involved testimony, no eyewitnesses, no contemporaneous

21   reporting.

22           So please take those things into consideration when

23   you design your sentence.  I am asking that you sentence him

24   on Count One as required by the law.  All the other counts,

25   concurrent.

1          The guidelines are strictly a recommendation,

2   advisory guidelines is what they're called, and the Court has

3   plenty of discretion to move one way, at least.  I don't

4   think you have discretion to move to a more serious sentence

5   than life.

6          Anyhow, Your Honor, that concludes my statements.

7          THE COURT:  All right.  Thank you, Mr. Weaver.

8          I'm going to take a brief recess.  If you all will

9   just stay in place, I'll be back on the bench shortly.  I

10  will be a few minutes.  If you have a need to use the

11  restroom or the facilities, I will probably be 15 or 20

12  minutes.

13          (Recess taken from 11:50 until 12:06 p.m.)

14          THE COURT:  Ms. Gable, is the government aware of

15  any bar or impediment to proceeding with the pronouncement of

16  sentence?

17          MS. GABLE:  No, Your Honor.

18          THE COURT:  Mr. Weaver, is the defense aware of any

19  legal bar to pronouncing sentence at this time?

20          MR. WEAVER:  No, sir, I'm not.

21          THE COURT:  All right.  Mr. Weaver, if you and your

22  client would stand, please, sir.

23          MR. WEAVER:  Yes, sir.

24          THE COURT:  The jury previously convicted Mr.

25  Morales of six counts of crimes involving the sexual

exploitation of children.  The Congress of the United States

has on numerous occasions made it a point to establish that

the sexual exploitation of children is a pernicious evil and

has drafted its federal criminal statute so as to express

that sentiment and establish penalties that are severe.

The United States' Sentencing Guidelines has also

taken into account the directions of Congress in setting the

advisory sentencing guidelines.  And so the Court has

considered the advisory sentencing guidelines and the

recommendations of the United States' Sentencing Commission

in the imposition of sentence.

The Court notes that the 3553 factors, I have, as I

always do, looked carefully through the Presentence Report to

determine whether or not there are any factors which would

warrant imposing a sentence other than that recommended by

the United States' Sentencing Guidelines, and I find no such

factors present in Mr. Morales's case.

Mr. Morales and his family continue to dispute his

guilt.  They continue to say that he did not commit the

offenses, and that all of the victims that testified at his

trial and that appeared before the Court today are lying.

The jury did not believe that and neither do I.

The defendant, in the judgment of the Court, abused

his position of trust.  He committed sexual offenses and acts

under the guise of being some type of a pseudo apostle.

There is nothing that the Court finds, as I've mentioned, in
anything about the history and characteristics of the
defendant that would support or provide a basis for varying
from the guidelines established by the United States'
Sentencing Commission.

I have taken into account, of course, the nature
and circumstances of this offense, the impact that it's had
on the victims' lives, the violation of their trust, the
violation of the principles of their faith, the establishment
in the parents a sense of guilt for having put their children
in a position of making them vulnerable to the commission of
these offenses, and all of those factors play a role in the
imposition of the Court's sentence.

I also note that in the judgment of the Court, the
defendant has perverted the principles of faith that he
claims to live by by the commission of these offenses and
that there's nothing which would militate in the favor of
lenity in the information contained in the Presentence Report
or that I've heard today that would suggest that anything
other than the imposition of a sentence of life would be
appropriate. So that's what I intend to do, Mr. Morales.

Having investigated the facts and circumstances and
the information contained in the Presentence Report, having
reviewed the advisory guidelines, having listened to the
presentation of the United States, having taken into

consideration the testimony of the witnesses and the

presentation of the victims' testimony as well as the

individuals who spoke on Mr. Morales's behalf -- I would note

that those individuals, Mr. Morales, continue to be

supportive of you.  You should take comfort in that.  Many

defendants who appear before the Court do not have that, but

they continue also to be in denial with respect to the

findings of the jury in connection with the crimes that you

have committed.

You will have every opportunity, as provided by the

law, to challenge the jury's verdict as well as any other

matters that you think should be taken into consideration by

the appellate court; but as I've mentioned to you and to

others who spoke on your behalf, today is not that day.

Pursuant to Title 18, United States Code, Section

3551 and 3553, it is the judgment of the Court that the

defendant, Luis Morales, is hereby committed to the custody

of the Bureau of Prisons to be imprisoned for a term of life.

This term shall consist of life imprisonment on Counts One

through Six, each term to run concurrently.

Upon release from imprisonment, you shall be placed

on supervised release for a term of ten years.  The term of

ten years is to run concurrently on Counts One through Six of

each count in the Indictment.

The mandatory drug testing requirements of the

 1   Violent Crime Control Act are waived.  However, the Court

 2   orders the defendant to submit to random drug testing, not to

 3   exceed 104 tests per year.

 4           While on supervised release, you are to comply with

 5   the standard conditions adopted by the court in the Middle

 6   District of Florida; and in addition, you shall comply with

 7   the following special conditions:

 8           You shall participate in a mental health program

 9   specializing in sexual offender treatment and submit to

10   polygraph testing for treatment and monitoring purposes.

11           You shall follow the Probation Office's

12   instructions regarding the implementation of this court

13   directive; and, further, you shall contribute to the cost of

14   such treatment and/or polygraphs, not to exceed an amount

15   determined reasonable by the probation officer based on the

16   ability to pay or the availability of third-party payments in

17   conformance with the Probation Office's sliding scale for

18   treatment services.

19           You are ordered to register with the state sexual

20   offender registration agency in any state where you reside,

21   visit, are employed, carry on a vocation or are a student as

22   directed by the probation officer.

23           The probation officer shall provide state officials

24   with all information required under the Florida Sexual

25   Predator and Sexual Offender Notification and Registration

1    Statutes, Florida Statute 943.0435 and/or the Sex Offender

2    Registration and Notification Act, also known as Title I of

3    the Adam Walsh Child Protection and Safety Act of 2006,

4    Public Law 109-248, and may direct you to report to these

5    agencies personally for required additional processing, such

6    as photographing, fingerprinting and D.N.A. collection.

7        You have to have no direct contact with minors

8    under the age of 18 without the written approval of the

9    probation officer, and shall refrain from entering into any

10    area where children frequently congregate, including schools,

11    day-care centers, theme parks, playgrounds, et cetera.

12        You are prohibited from possessing, subscribing to

13    or viewing any video, magazines or literature depicting

14    children in the nude and/or in sexually explicit positions.

15    You are not to possess or use a computer with access to any

16    online service at any location, including employment, without

17    the written approval of the Probation Office.  This includes

18    access through any Internet service provider, bulletin board

19    system or any public or private computer network system.

20        You shall permit routine inspection of your

21    computer system, hard drives and other storage -- media

22    storage materials to confirm adherence to this condition.

23    This condition shall be no more intrusive than is necessary

24    to ensure compliance with this condition.

25        You shall inform your employer or other third party

who may be impacted by this condition of this computer-related restriction and the computer-inspection provision of the condition.

You shall submit to a search of your person, residence, place of business, any storage units under your control, computer or vehicle conducted by the probation officer at a reasonable time and in a reasonable manner based upon a reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to a search may be grounds for revocation.

You shall inform any residents of any premises that you inhabit that the premises may be subjected to a search pursuant to this condition.

You are ordered to cooperate in the collection of D.N.A., as directed by the probation officer. Based upon your limited financial status, the fine is waived.

It's further ordered that you pay to the United States a special specialty in the amount of $600, which is due immediately.

In addition, the mandatory restitution provision of Title 18, United States Code, Section 3663(a), apply in this case, and it is ordered that you make restitution in the amount of $4,940.23 to the parents of M.R. and $31,030 to the parents of T.M. Restitution is payable to the clerk of the United States District Court for distribution to the victims.

1          While in the Bureau of Prisons' custody, you shall

2     either, one, pay at least $25 quarterly if you have a

3     non-UNICOR job or pay at least 50 percent of your monthly

4     earnings if you have a UNICOR job.

5          Upon release from custody, you are ordered to begin

6     making payments of $200 per month, and this payment schedule

7     shall continue until such time as the Court is notified by

8     the defendant, the victim or the government that there has

9     been a material change in your ability to pay.

10          Restitution of $31,030 to T.M. shall be paid

11     jointly and severally with Rebeca Rivera.

12          It is further ordered that you forfeit to the

13     United States those assets previously identified in the

14     Indictment that are subject to forfeiture.

15          I would like to point out, in addition to the

16     factors which I enumerated into the record previously, that

17     the Court also took into account, as it must, under 3553 the

18     need for promoting respect for the law, for deterring, both

19     specifically and generally, this type of offense.

20          Mr. Weaver, I do want to make special note that I

21     have taken into account your argument that the imposition of

22     this sentence, which I think you described as "draconian,"

23     resulted in a disparate treatment of Mr. Morales as compared

24     to other defendants, and I want to note for the record that

25     the Court does not believe that the imposition of this

1    sentence creates a disparate sentence with respect to Mr.

2    Morales under the facts and circumstances of this case.

3         After having considered the advisory sentence

4    guidelines, the minimum mandatory sentence required by

5    statute, and all the factors identified in Title 18, United

6    States Code, Section 3553(a)(1) through (7), the Court finds

7    that the sentence imposed is sufficient, but not greater than

8    necessary, to comply with the statutory purposes of

9    sentencing.

10        Mr. Morales is remanded to the custody of the

11   United States Marshal to await designation by the Bureau of

12   Prisons.

13        Mr. Morales, I am required to advise you that it is

14   your right to appeal from the judgment and sentence of the

15   court within 14 days from today's date or the day that the

16   judgment is actually entered, whichever is later, and that a

17   failure to appeal within the 14-day period will be a waiver

18   of your right to appeal.

19        The government also has the right to appeal from

20   this sentence, and you are advised that you are entitled to

21   the assistance of counsel in connection with the taking of an

22   appeal; and if you are you unable to afford a lawyer, one

23   will be provided for you.

24        In the event of an appeal, it will be the

25   obligation and responsibility of your appointed counsel to

1  continue in his representation on appeal unless and until he

2  is relieved by order of the Court of Appeals.

3        The Court having pronounced sentence, does either

4  counsel for the defendant or counsel for the government have

5  any objections to the sentence or the manner in which the

6  sentence was imposed, other than those previously indicated

7  on the record, Mr. Weaver?

8        MR. WEAVER:  None other than those that were

9  previously stated.

10        THE COURT:  All right.

11        Ms. Gable.

12        MS. GABLE:  Your Honor, the government has no

13  objection.  And we would move to dismiss the original

14  Indictment in this case, Counts One through Five.

15        THE COURT:  The government's motion to dismiss

16  Counts One through Five of the original Indictment is

17  granted.

18        Anything further?

19        MS. GABLE:  No, Your Honor.  Thank you.

20        MR. WEAVER:  Judge, I have one other matter I would

21  like to address with the Court.

22        THE COURT:  Yes, Mr. Weaver.

23        MR. WEAVER:  Could we approach, Your Honor?

24        THE COURT:  Sure.

25        I'll see counsel at side bar.

1          (Bench conference as follows.)

2          MR. WEAVER:  I'm a private attorney on this case,

3     and I need to move to withdraw.  I'm asking the Court to

4     appoint him the public defender for purposes of appeal.

5          I was paid $18,000 to do this case.  I didn't know

6     what it involved.  When I got into --

7          (In open court.)

8          THE COURT:  Can we have that back, the white noise

9     back.  Thank you.

10          (Bench conference continued as follows.)

11          MR. WEAVER:  But I saw it through.  There was an

12     issue halfway through the case with a potential conflict of

13     interest regarding me that still could appear, I suppose.

14          Additionally, as you heard Mr. Morales today, he's

15     unhappy with my services, which creates another conflict of

16     interest.

17          So it's best to have somebody else do the appeal,

18     to look over whatever mistakes I might have made in his

19     representation, and I'm moving to withdraw at this point in

20     time.

21          Mr. Joshi couldn't be here today because --

22          THE COURT:  I thought I saw him come in.

23          MR. WEAVER:  He was here for a moment, but

24     apparently he's had a real serious illness, which has caused

25     him to be out of his office for about the last month.

1           THE COURT:  Okay.

2           MR. WEAVER:  He's still not back to work.  I don't

3      know the nature of his illness, but he's asked me to relay to

4      the Court that it's his intention to ask to be relieved also

5      for purposes of appeal, and for his firm.

6           I can't speak as to what they were paid.  But,

7      additionally, another factor is my contract with my client,

8      and I know this doesn't really matter to the Court, but it

9      doesn't include me working on his appeal.

10          So I'm asking the Court to be relieved at this

11     point in time.  I think I've done plenty of work for what I

12     was paid in the case and I wanted to, you know, see it

13     through to this point, provide him competent representation;

14     but it would be an extreme hardship for me to continue at

15     this point in time.

16          THE COURT:  Okay.

17          Ms. Gable.

18          MS. GABLE:  Your Honor, my suggestion to the Court

19     is that defense counsel file a written motion to withdraw,

20     allow the magistrate judge to take that up -- of course, I

21     wouldn't oppose that motion -- and then the magistrate judge

22     at that same time can make a determination as to whether or

23     not the defendant qualifies for court-appointed counsel for

24     his appeal.  That way, the defendant won't be without

25     representation until something occurs.

1          THE COURT:  What I'll do, Mr. Weaver, because I am

2     sensitive to the issues that this situation presents, I'm not

3     going to rule on your oral motion to withdraw, but I am going

4     to direct you to file a written motion to withdraw as well as

5     Mr. Joshi, if in fact that's his desire.

6          I will contact the magistrate's office and let them

7     know what's happening and ask them to advance the situation

8     on the calendar --

9          MR. WEAVER:  Yes, sir.

10          THE COURT:  -- to get you the earliest possible

11     disposition of your motion, so that if the federal defender

12     is going to be appointed, then they'll have as much time as

13     possible in order to file a notice of appeal and otherwise

14     perfect any appellate rights that Mr. Morales might have.

15          MR. WEAVER:  Yes, sir.  I certainly don't want to

16     cause his rights to be affected.

17          THE COURT:  No.  I appreciate that.  I don't

18     either.  I don't think the government does either.  So when I

19     leave the bench, I'll contact the -- who is the magistrate;

20     do you remember?

21          MR. WEAVER:  Spaulding.

22          MS. GABLE:  It is Judge Spaulding.

23          THE COURT:  I'll contact Judge Spaulding and give

24     her a Cliff Notes version of where we are and ask her to be

25     on the lookout for your motion.  So if you file it today --

1      MR. WEAVER:  I'll try to get it filed this

2   afternoon.  If not, it'll be tomorrow for sure.

3      THE COURT:  All right.  Thank you.

4      (In open court.)

5      THE COURT:  Is there anything further from the

6   United States?

7      MS. GABLE:  No, Your Honor.

8      THE COURT:  Is there anything further from the

9   defense, Mr. Weaver?

10     MR. WEAVER:  No.

11     THE COURT:  Hang on one second.

12     Mr. Morales, your attorney has brought some matters

13  to my attention in connection with your representation, and I

14  wanted to advise you on the record that I've instructed your

15  lawyer to file any papers that he thinks are appropriate with

16  respect to your need for counsel.  He's going to do that.

17     I'm going to speak with the magistrate judge; and

18  to the extent that any filings require a hearing by the Court

19  in short order, so that you can protect your appellate rights

20  and make sure that you're adequately represented, that you

21  have a hearing in short order on that.

22     So I just wanted to let you know that that's what

23  transpired up here at the side bar, and that I am going to

24  contact the magistrate's office and tell them to be on the

25  lookout for filings from your lawyer in connection with your

1    representation.  All right, sir?

2              THE DEFENDANT:  (Affirmative nod.)

3              THE COURT:  We'll be in recess.

4              (Proceedings terminated at 12:22 p.m.)

5                  - - - - - - - -

6                   Reporter's Certification

7    I certify that the foregoing is a correct transcript from the

8    record of proceedings in the above-entitled matter.

9                              s/Diane Peede, RMR, CRR
                               Official Court Reporter
10                             United States District Court
     Date:  March 5, 2013      Middle District of Florida

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25